UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LENNY JESSIE WHITFIELD,

        Petitioner,                  Case No. 2:24-cv-10065
                                                Hon. Jonathan J.C. Grey

v.

MATT MACAULEY,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING MOTION TO STAY
### (ECF Nos. 1 and 11)

    Lenny Jessie Whitfield, a Michigan prisoner serving a mandatory life sentence, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Following a bench trial in the Macomb Circuit Court, Whitfield was convicted of several felony offenses, including one count of first-degree premeditated murder. Mich. Comp. Laws § 750.316. Whitfield's habeas petition asserts that insufficient evidence was presented at trial to prove the element of deliberation to sustain his first-degree murder conviction. (ECF No. 1.)

    Whitfield also filed a motion to stay the case. He requests permission to return to state court to present a new theory in support of

his sufficiency claim. Whitfield asserts that Michigan law does not recognize a doctrine of "transferred deliberation." He argues that such a theory would have been necessary to convict him of first-degree murder where his case involved the shooting death of an innocent bystander. (ECF No. 11.) Since neither argument merits habeas relief, the Court denies the petition and denies the motion to stay.

## I. BACKGROUND

In the early morning hours of October 12, 2019, Jared Glenn was shot in the head and killed when he stepped into the parking lot of the Last Call Bar and Grill in Eastpointe. Five other patrons standing outside of the bar were also shot. Together with surveillance video, multiple eyewitness accounts established that Whitfield was the shooter. The central issue at trial was Whitfield's state of mind.

Multiple patrons of the bar testified that Whitfield and another man arrived at the Last Call sometime after midnight. Whitfield started causing trouble—he had to be asked to extinguish a cigarette, he became too intoxicated, he made unwanted advances toward a female patron, and he broke a beer bottle on the floor. Mike Sullivan, one of two bouncers at the bar, asked Whitfield to leave. (ECF No. 9-7, PageID.317–343

2

(Marino); PageID.359–382 (Collins); PageID.427–445 (Kus); PageID.463–468 (Aussicker); PageID.498–513 (Sullivan).)

Sometime after he was kicked out, Whitfield attempted to return to the bar. Sullivan intercepted him in the vestibule and told him that he could not come back inside. The two men exchanged words and, according to Sullivan, Whitfield threatened to come to his house and shoot his family. Sullivan responded by punching Whitfield in the face, knocking him to the ground. Some witnesses testified that Sullivan continued to kick and beat Whitfield while he was down. The other bouncer intervened, and Whitfield crawled into the parking lot. (*Id.*)

Shortly after this incident, and completely unrelated to it, two groups of women walked out of the bar and began fighting in the parking lot. The fight soon broke up, but one woman had a cut on her face and returned inside to clean up. Seeing this, her friend Jared Glenn went outside to confront those involved. (*Id.*, PageID.399–411 (Jay); PageID.471–481 (Ruehlen), PageID.486–494 (James); PageID.498–513 (Sullivan).)

As Glenn exited the bar, Whitfield appeared between two parked cars with a handgun. He fired six shots, hitting six people. Glenn was

3

shot in the head and died four days later in the hospital. Five others suffered gunshot wounds of varying severity. Much of the incident in the parking lot was captured on video. (ECF No. 9-7, PageID.317–343 (Marino); ECF No. 9-8, PageID.545–554 (545-54) (Det. Sellers); PageID.579–598 (Det. Ignace); PageID.661–697 (Det. Wood).)

Whitfield testified in his own defense. He disputed Sullivan's claim that he had been kicked out of the bar and claimed that he had chosen on his own to go outside to smoke a cigarette. He also disputed the allegation that he had harassed a woman at the bar, and he explained that he bought shots for patrons after he had accidentally lit a cigarette inside the bar. He also explained that the beer bottle accidentally broke on the ground because it slid off a slanted surface. (ECF No. 9-8, PageID.661–697 (Whitfield).)

Whitfield testified that the verbal altercation with Sullivan elevated when Sullivan sucker-punched him in the head after the beer bottle broke, knocking him unconscious. When he regained consciousness, Whitfield found himself in the parking lot with a swollen face, a busted lip, and no glasses. He staggered towards his parked vehicle and heard women yelling behind him. He believed they were

4

shouting at him. He made his was to his truck, retrieved a handgun hidden under his hood after some difficulty, and then he returned to the sidewalk in front of the bar. (*Id.*, PageID.679–683.)

Whitfield admitted he was angry and disoriented from being knocked out. He testified that he literally heard a voice in one ear warning him that if he went through with his actions, he would go to jail, but he also heard his own voice scream in his other ear, "I don't give a fuck!" Whitfield testified that he raised the gun over his head and fired, claiming he saw only smoke and fire and didn't realize there was a crowd in front of the bar. (*Id.*, PageID.684–685.)

Whitfield fled in his truck. A patron recorded the license plate number, and police used it to identify Whitfield. Later that day they arrested him and recovered the handgun used in the shooting from his home. Police also retrieved surveillance video footage showing parts of the incident in the parking lot. (ECF No. 9-8, PageID. 545–554 (Det. Sellers); PageID.558–570 (Lt. Merlo); PageID.579–598 (Det. Ignace); PageID. 601–617 (Grabowski); PageID.624–644 (Det. Wood).)

Following closing arguments, the trial court made its findings of fact. The court found that in view of Whitfield's use of a gun (ECF No. 9-

5

9, PageID.738), the number of shots fired (*Id.*), and the number of people wounded in the crowd at the door (*Id.* at PageID.739–740), "the evidence simply belies the defendant's testimony that despite losing most of his eyesight, he randomly walked all the way to the front of the bar where people were pouring out of the exit at closing time and then worked his way from the sidewalk position to position himself between two cars where he had a perfect angle to shoot the mass of people that were exiting the bar." (*Id.* at PageID.740.)

Turning to the first-degree murder charge, the court found that Whitfield intended to kill anyone standing near the bar entrance, as Glenn was. (*Id.*, PageID.744.) In discussing the element of premeditation, the court relied on the surveillance video. The court found that it showed that Whitfield made it back to his car at 1:54 a.m. after he was assaulted by Sullivan. The court stated that within a minute, Whitfield's friend was also in the parking lot, so Whitfield had no reason to go back to the bar instead of just leaving. Instead, Whitfield spent the next five minutes trying to access the hood of his car to retrieve his gun. As Whitfield walked back towards the bar, video showed Whitfield's friend running back to Whitfield's vehicle. The court inferred that this meant "the friend

6

kn[ew] that the defendant [wa]s up to something and want[ed] nothing to do with it." (*Id.*, PageID.746.) Then, while Whitfield is no longer visible in the video, "10 seconds later, his friend visibly ducks and flinches," indicating the start of gunfire. (*Id.*) And after another 10 seconds, people could be seen running to their cars, including Whitfield. (*Id.*)

The court considered the fact that Whitfield walked along the sidewalk behind parked cars before walking towards the door and firing, alongside additional acts of discarding his jacket, hiding the gun, and his shooting position which all resulted in the Court finding "that despite his intoxication, the defendant proved himself to be methodical in executing his plan to ambush the patrons and staff." (*Id.*, PageID.746–747.)

The court further noted that Whitfield's testimony about the voices he said he heard in his head before shooting showed that "he actually weighed the potential consequences of shooting into a crowd of people." (*Id.*, PageID.747.) The court found Whitfield guilty of first-degree murder.

Following his conviction and sentence, Whitfield filed a claim of appeal in the Michigan Court of Appeals. His appellate attorney filed a brief on appeal that raised the following claim:

> I. There was insufficient evidence to support a conviction of first-degree murder. Mr. Whitfield's conviction and sentence on that charge should be vacated.

Specifically, Whitfield argued that there was insufficient evidence presented to show that he acted with deliberation given the evidence that he acted out of disturbed excitement after Sullivan beat him. (ECF No. 9-11, PageID.849–852.) The Michigan Court of Appeals affirmed in an unpublished opinion. *People v. Whitfield*, No. 356049, 2022 WL 1591591 (Mich. Ct. App. May 19, 2022).

Whitfield filed an application for leave to appeal in the Michigan Supreme Court that raised the same claim. Leave to appeal was denied in a standard form order. *People v. Whitfield*, 979 N.W.2d 842 (Mich. 2022) (Table).

Here, after Respondent filed its responsive pleading, Whitfield filed a motion to stay the case so that he can file a post-conviction motion in the trial court. Whitfield asserts that there was no evidence that he deliberated about whether to kill Glenn, someone he did not know. He argues that the doctrine of transferred intent has never been applied to the element of deliberation, and whether it should apply is a question the Michigan courts have not decided. (ECF No. 11.)

8

## II. LEGAL STANDARD

A § 2254 habeas petition is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' [must] show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 584 U.S. 122, 124–125 (2018) (quoting 28 U.S.C. § 2254(d)). The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

9

correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Also, a state-court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. ANALYSIS

Whitfield claims that insufficient evidence was presented at trial to establish the element of deliberation for first-degree murder. On direct appeal, Whitfield argued that the evidence indicated that the shooting occurred shortly after he was badly beaten by the bouncer, and so he acted out of anger and not after deliberative reflection. In his motion for a stay, Whitfield presents a new theory in support of the claim: he certainly did not deliberate about killing the deceased victim, someone he did not even know, and Michigan does not recognize a principle of "transferred deliberation."[1]

---

[1] While this argument has obviously not been exhausted, the Court may reject it on the merits despite non-exhaustion. *See* 28 U.S.C. § 2254(b)(2).

The Michigan Court of Appeals rejected the version of the argument presented to it as follows:

> Defendant argues that there is insufficient evidence presented to find him guilty of first-degree murder. Specifically, defendant argues that the prosecution did not prove the deliberation element of that offense beyond a reasonable doubt. We disagree.
>
> "[D]ue process requires proof by the prosecutor of each element beyond a reasonable doubt." *People v. Mette*, 243 Mich. App. 318, 327 (2000). A person is guilty of first-degree murder when the murder is "perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." MICH. COMP. LAWS § 750.316(1)(a). For first-degree murder, the prosecution must show that the killing was intentional, deliberate, and premeditated. *People v. Youngblood*, 165 Mich. App. 381, 386-387 (1988). That is, "[t]o convict of first-degree murder, the prosecution [is] required to prove beyond a reasonable doubt that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberated." *Id*. at 386-387. "To premediate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v. Oros*, 502 Mich. 229, 240 (2018) (cleaned up). Further, with regard to deliberation, "[t]he time within which a wicked purpose is formed is immaterial, provided it is formed without disturbing excitement. The question of deliberation, when all the circumstances appear, is one of plain common sense ...." *Id*. at 243 (quotation marks and citation omitted). Premeditation and deliberation can be determined through the facts and circumstances surrounding the killing. *Youngblood*, 165 Mich App at 387.
>
> Defendant does not argue that the evidence failed to show beyond a reasonable doubt that he intentionally killed a human. Further, given his express reference in his brief on

appeal to "deliberation" and "disturbing excitement," which our Supreme Court has used to explain the "deliberation" element, *see Oros*, 502 Mich. at 243, and given that he does not reference "premeditation" or otherwise analyze that element, it appears that he is not arguing that the prosecution failed to show premeditation. The only element at issue is therefore deliberation.

The trial court did not err by finding that the evidence was sufficient to show deliberation beyond a reasonable doubt. The time that defendant spent retrieving his handgun from his car's air vent was more than sufficient for him to deliberate upon pointing and shooting the gun at the entrance to the bar. *See Oros*, 502 Mich. at 243 (explaining that deliberation may occur in a matter of seconds). Moreover, defendant himself admitted while testifying that he was aware at the time that "jail" was a likely outcome of the shooting. Thus, defendant clearly "measure[d] ... the major facets" of shooting into the bar. *See id*. Additionally, defendant removed his jacket before returning to the bar with his handgun, which indicates that he was able to reflect upon a detail that would reduce the possibility of criminal punishment for his upcoming actions—by removing his jacket, defendant made it less likely that those inside the bar would recognize him. Given these facts, in addition to the other facts cited by the trial court showing that defendant executed a methodical plan to shoot directly at a large number of people gathered near the front of the bar, the trial court did not err by finding that the evidence was sufficient to show the element of deliberation beyond a reasonable doubt. In other words, defendant did not abruptly shoot at the group of people, with no thought or reflection beforehand. Rather, he formulated a plan that would reduce his chances of being stopped beforehand or sent to jail afterwards. He deliberated upon the shooting.

*Whitfield*, 2022 WL 1591591, at *2–3 (footnote omitted).

Under clearly established Supreme Court law, the standard governing sufficiency of the evidence claims is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under AEDPA, a habeas court's "review of a state-court conviction for sufficiency of the evidence is very limited," *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018), because *Jackson* claims are "subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam).

First, it is the responsibility of the jury (or trial court at a bench trial) to decide what conclusions should be drawn from the evidence admitted at trial. *Johnson*, 566 U.S. at 651 (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)). "And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* (quoting *Smith*, 565 U.S. at 2); see also *Tanner v. Yukins*, 867 F.3d 661, 672 (6th

13

Cir. 2017) (stating that "two layers of deference apply [to a sufficiency-of-the-evidence claim], one to the jury verdict, and one to the state appellate court").

Turning to the present case, among other alternatives under Michigan law, murder can be elevated to first-degree murder where it is "perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." Mich. Comp. Laws § 750.316(1)(a). Whitfield challenges the element of deliberation. Deliberation requires that a person "measure and evaluate the major facets of a choice or problem." *See People v. Woods*, 416 Mich 581, 599 (1982) (quotation marks and citation omitted). Premeditation and deliberation may be established during an interval of time between the initial homicidal thought and ultimate action which would allow a reasonable person time to subject the nature of his or her action to a "second look." *People v. Gonzalez*, 468 Mich 636, 641 (2003). "The time within which a wicked purpose is formed is immaterial, provided it is formed without disturbing excitement. The question of deliberation, when all the circumstances appear, is one of plain common sense; and an intelligent jury can seldom

14

be at a loss to determine it." *People v. Holmes*, 111 Mich 364, 372 (1896) (quoted in *People v. Oros*, 502 Mich. 229, 243 (2018)).

The state court reasonably applied the *Jackson* standard in rejecting this claim. First, the evidence showed that after the assault by the bouncer, Whitfield spent several minutes struggling to retrieve the handgun from under his hood before walking back towards the entrance of the bar and firing six shots at the exiting crowd of people. Viewing the evidence most favorably to the prosecution, as *Jackson* dictates, a rational factfinder could conclude from these circumstances that, during this extended period, Whitfield had an opportunity to measure and evaluate the major facets of firing his gun into the crowd. Moreover, this is an unusual case in that the defendant's own testimony—viewed most favorably to the prosecution—provided direct evidence supporting the element of deliberation. Whitfield's description of the different voices he heard as he walked back to the bar could reasonably have been interpreted by the factfinder as indicating that he actually deliberated about whether carrying out the shooting was worth it in view of the fact that he would surely go to jail. Whitfield described what could reasonably be viewed as a deliberative process as he headed back to the bar with his

weapon. The state court reasonably found that sufficient evidence of deliberation was presented at trial.

Whitfield's unexhausted, alternative argument fairs no better. Whitfield asserts that there was no evidence presented that he deliberated whether to kill Glenn. Whitfield argues that he didn't know Glenn, didn't recall seeing him at the bar, and didn't see him standing by the entrance when the shots were fired. Whitfield further argues that convicting him of first-degree murder, given these facts, would require a doctrine of "transferred deliberation" that does not exist under Michigan law. Whitfield's argument suffers from two somewhat obvious flaws.

First, Whitfield is wrong on the facts. The trial court, sitting as the finder of fact, did **not** find that Whitfield only intended to shoot and kill the bouncer. The court found that Whitfield acted with premeditation and deliberation to shoot and kill **any** of the people standing in front of the bar, whether he knew who they were or not. That is, the court did not apply any concept of "transferred deliberation."

Second, Whitfield is wrong on the law:

> In the unintended-victim (or bad-aim) situation where A aims at B but misses, hitting C -- it is the view of the criminal law that A is just as guilty as if his aim had been accurate. Thus where A aims at B with a murderous intent to

16

> kill, but because of a bad aim he hits and kills C, A is uniformly held guilty of the murder of C. *And if A aims at B with a first-degree-murder state of mind, he commits first degree murder as to C, by the majority view.* So too, where A aims at B with intent to injure B but, missing B, hits and injures C, A is guilty of battery of C.

*People v. Youngblood*, 165 Mich. App. 381, 387–388 (1988) (quoting LaFave & Scott, Handbook on Criminal Law, ch. 3, § 35, at 252–253) (emphasis added). A "first-degree murder state of mind" in Michigan is one that involves premeditation and deliberation. Mich. Comp. Laws § 750.316(1)(a). Thus, even if it were true that Whitfield only premeditated and deliberated about shooting and killing Sullivan, that entire mental state—the one required for first-degree murder—transferred under state law to the killing of Glenn too. Whitfield's alternative insufficiency of the evidence argument is, therefore, also without merit.

## IV. CONCLUSION

Because Whitfield's claims do not merit habeas relief, the petition is denied. Furthermore, because jurists of reason would not debate the Court's conclusion, the Court will deny Whitfield a certificate of appealability. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–484 (2000). Finally, the Court will deny permission to appeal in

17

forma pauperis because any appeal of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

Therefore, the Court **DENIES** the petition for a writ of habeas corpus (ECF No. 1), **DENIES** Petitioner's motion to stay, (ECF No. 11), **DENIES** a certificate of appealability, and **DENIES** permission to appeal in forma pauperis.

**SO ORDERED**.

Dated: December 2, 2024

**s/ Jonathan J.C. Grey**
Jonathan J.C. Grey
United States District Judge

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 27, 2024.

**s/ S. Osorio**
Sandra Osorio
Case Manager