# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LENNY JESSIE WHITFIELD,

                Petitioner,           Case No. 2:24-cv-10065
                                       Hon. Jonathan J.C. Grey

v.

MATT MACAULEY,

                Respondent.

_____/

## AMENDED OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING MOTION TO STAY
## (ECF Nos. 1 and 11)

Lenny Jessie Whitfield, a Michigan prisoner serving a mandatory life sentence, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Following a bench trial in the Macomb Circuit Court, Whitfield was convicted of several felony offenses, including one count of first-degree premeditated murder. MICH. COMP. LAWS § 750.316. Whitfield's habeas petition asserts that insufficient evidence was presented at trial to prove the element of deliberation to sustain his first-degree murder conviction. (ECF No. 1.)

Whitfield also filed a motion to stay the case. He requests permission to return to state court to present three additional claims that

he wishes to eventually add to his federal petition: (1) unless there exists a principle of "transferred premeditation and deliberation," there was insufficient evidence presented at trial to show that Whitfield premeditated and deliberated an intent to kill the victim, (2) trial counsel was ineffective for failing to request a jury instruction on the lesser offense of voluntary manslaughter, and (3) appellate counsel was ineffective for failing to raise the foregoing claim on direct appeal. (ECF No. 11, PageID.1081.)

Because none of Whitfield's four claims merit habeas relief, the Court denies the petition and denies the motion to stay.

## I.    BACKGROUND

In the early morning hours of October 12, 2019, Jared Glenn was shot in the head and killed when he stepped out into the parking lot of the Last Call Bar and Grill in Eastpointe. Five other patrons standing outside of the bar were also shot. Together with surveillance video, several eyewitness accounts established that Whitfield was the shooter. The central issue at trial was Whitfield's state of mind.

Multiple patrons of the bar testified that Whitfield and another man arrived at the Last Call sometime after midnight. Whitfield started

2

causing trouble—he was asked to extinguish a cigarette, he became too intoxicated, he made unwanted advances toward a female patron, and he broke a beer bottle on the floor. Mike Sullivan, one of two bouncers at the bar, asked Whitfield to leave. (ECF No. 9-7, PageID.317–343 (Marino); PageID.359–382 (Collins); PageID.427–445 (Kus); PageID.463–468 (Aussicker); PageID.498–513 (Sullivan).)

Sometime after he was kicked out, Whitfield attempted to return to the bar. Sullivan intercepted him in the vestibule and told him that he could not come back inside. The two men exchanged words, and according to Sullivan, Whitfield threatened to come to his house and shoot his family. Sullivan responded by punching Whitfield in the face, knocking him to the ground. Some witnesses testified that Sullivan continued to kick and beat Whitfield while he was down. Another bouncer intervened, and Whitfield crawled into the parking lot. (*Id.*)

Shortly after this incident, and completely unrelated to it, two groups of women walked out of the bar and began fighting in the parking lot. The fight soon broke up, but one woman had a cut on her face and returned inside to clean up. Seeing this, the injured woman's friend Jared Glenn went outside to confront those involved. (*Id.*, PageID.399–411

3

(Jay);      PageID.471–481      (Ruehlen),      PageID.486–494      (James); PageID.498–513 (Sullivan).)

As Glenn exited the bar, Whitfield appeared between two parked cars with a handgun. He fired six shots, hitting six people. Glenn was shot in the head and died four days later in the hospital. Five others suffered gunshot wounds of varying severity. Much of the incident in the parking lot was captured on video. (ECF No. 9-7, PageID.317–343 (Marino); ECF No. 9-8, PageID.545–554 (Det. Sellers); PageID.579–598 (Det. Ignace); PageID.661–697 (Det. Wood).)

Whitfield testified in his own defense. He disputed Sullivan's claim that he had been kicked out of the bar and claimed that he had chosen on his own to go outside to smoke a cigarette. He also disputed the allegation that he had harassed a woman at the bar, and he explained that he bought shots for patrons after he had accidentally lit a cigarette inside the bar. He also explained that the beer bottle accidentally broke on the ground because it slid off a slanted surface. (ECF No. 9-8, PageID.661– 697 (Whitfield).)

Whitfield testified that the verbal altercation with Sullivan escalated when Sullivan sucker-punched him in the head after the beer

4

bottle broke, knocking him unconscious. When he regained consciousness, Whitfield found himself in the parking lot with a swollen face, a busted lip, and no glasses. He staggered towards his parked vehicle and heard women yelling behind him. He believed they were shouting at him. He made his was to his truck, retrieved a handgun hidden under his hood after some difficulty, and then he returned to the sidewalk in front of the bar. (*Id.*, PageID.679–683.)

Whitfield admitted that he was angry and disoriented from being knocked out. He testified that he literally heard a voice in one ear warning him that if he went through with his actions, he would go to jail, but he also heard his own voice scream in his other ear, "I don't give a fuck!" Whitfield testified that he raised the gun over his head and fired, claiming he saw only smoke and fire and didn't realize there was a crowd in front of the bar. (*Id.*, PageID.684–685.)

Whitfield fled in his truck. A patron recorded the license plate number, and police used it to identify him. Later that day they arrested him and recovered the handgun used in the shooting from his home. Police also retrieved surveillance video showing parts of the incident in the parking lot. (ECF No. 9-8, PageID.545–554 (Det. Sellers);

PageID.558–570 (Lt. Merlo); PageID.579–598 (Det. Ignace); PageID.601–617 (Grabowski); PageID.624–644 (Det. Wood).)

Following closing arguments, the trial court made its findings of fact. The court found that in view of Whitfield's use of a gun, the number of shots fired, and the number of people wounded in the crowd at the door, "the evidence simply belies the defendant's testimony that despite losing most of his eyesight, he randomly walked all the way to the front of the bar where people were pouring out of the exit at closing time and then worked his way from the sidewalk position to position himself between two cars where he had a perfect angle to shoot the mass of people that were exiting the bar." (ECF No. 9-9, PageID.736–747.)

Turning to the first-degree murder charge, the court found that Whitfield intended to kill anyone standing near the bar entrance, as Glenn was. (*Id.*, PageID.744.) In discussing the elements of premeditation and deliberation, the court relied on the surveillance video. The court found that it showed that Whitfield made it back to his car at 1:54 a.m. after he was assaulted by Sullivan. (*Id.*) The court stated that within a minute, Whitfield's friend was also in the parking lot, so Whitfield had no reason to go back to the bar instead of just leaving. (*Id.*,

6

744–745.) Instead, Whitfield spent the next five minutes trying to access the hood of his car to retrieve his gun. (*Id.*, PageID.745.) As Whitfield walked back towards the bar, Whitfield's friend could be seen running back to Whitfield's vehicle. (*Id.*, PageID.746.) The court inferred that this meant the "the friend knows that the defendant is up to something and wants nothing to do with it." (*Id.*) Then, while Whitfield is no longer visible in the video, "10 seconds later, his friend visibly ducks and flinches," indicating that this is when the gunfire started. (*Id.*, PageID.746.) And after another ten seconds, people could be seen running to their cars, including Whitfield. (*Id.*)

The court found that the fact that Whitfield walked along the sidewalk behind the parked cars before walking towards the door and firing, discarding his jacket, hiding the gun, and his shooting location demonstrated "that despite his intoxication, the defendant proved himself to be methodical in executing his plan to ambush the patrons and staff." (*Id.*, PageID.746–747.)

The court further noted that Whitfield's testimony about the voices he heard in his head before shooting showed that "he actually weighed the potential consequences of shooting into a crowd of people." (*Id.*,

PageID.747.) The court found Whitfield guilty of first-degree murder. (*Id.*)

Following his conviction and sentence, Whitfield filed a claim of appeal in the Michigan Court of Appeals. His appellate attorney filed a brief on appeal that raised the following claim:

> I. There was insufficient evidence to support a conviction of first[-]degree murder. Mr. Whitfield's conviction and sentence on that charge should be vacated.

(ECF No. 9-11, PageID.849.) Specifically, Whitfield argued that there was insufficient evidence presented to show that he acted with deliberation given the evidence that he acted out of disturbed excitement following the beating from Sullivan. (ECF No. 9-11, PageID.849–852.) The Michigan Court of Appeals affirmed in an unpublished opinion. *People v. Whitfield*, No. 356049, 2022 WL 1591591 (Mich. Ct. App. May 19, 2022).

Whitfield filed an application for leave to appeal in the Michigan Supreme Court that raised the same claim. Leave to appeal was denied by standard form order. *People v. Whitfield*, 979 N.W.2d 842 (Mich. 2022) (Table).

8

After Respondent filed its responsive pleading, Whitfield filed a motion to stay that case so that he could file a post-conviction motion in the trial court. Whitfield asserted in his motion that he wished to raise the following three new claims in state court:

> I. Was the evidence insufficient to prove the transferal of premeditation and deliberation? Or are they automatically transferred with [i]ntent? Did the state fail to prove beyond a reasonable doubt the elements of premeditation and deliberation can be transferred in order to convict petitioner of first-degree premeditated murder?
>
> II. Was Trial counsel ineffective by failing to request a lesser included offense jury instruction[] to the charge of voluntary manslaughter? Causing [P]etitioner to involuntarily waive th[is] issue.
>
> III. Was Appellate Counsel ineffective for not raising the issues of trial counsel being ineffective for not requesting the lesser included offense jury instruction of voluntary manslaughter?

(ECF No. 11, PageID.1081.)

The Court issued an opinion denying the petition, explicitly addressing the sufficiency of the evidence claim raised by Whitfield in the state courts on direct appeal and the new version of the claim presented in his motion to stay. (ECF No. 12.)

Whitfield appealed, and the Sixth Circuit found that as this Court did not address the ineffective assistance of counsel claims raised in the

9

motion for stay, that it did not have jurisdiction to consider the interlocutory appeal. *Whitfield v. Morrison*, No. 24-2121, 2025 WL 2305650, at *2 (6th Cir. June 24, 2025). The Court remanded the case for consideration of Whitfield's unresolved voluntary-manslaughter and related ineffective assistance of counsel claims. *Id.*, at **2–3.

Rather than issue a separate opinion addressing these unresolved issues, the Court issues this Amended Opinion addressing all four of Whitfield's claims.[1]

## II.   LEGAL STANDARD

A § 2254 habeas petition is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' [must] show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 584

---

[1] The Court does not alter its analysis of the two claims addressed in the original Opinion. (ECF No. 12.)

U.S. 122, 124–125 (2018) (quoting 28 U.S.C. § 2254(d)). The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Also, a state-court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III. ANALYSIS

## A. Sufficiency of the Evidence

Whitfield's first two claims assert that insufficient evidence was presented at trial to establish the element of deliberation for first-degree murder. On direct appeal, Whitfield argued that the evidence indicated that the shooting occurred shortly after he was badly beaten by the bouncer, and so he acted out of anger and not after deliberative reflection. In his motion for stay, Whitfield presents a second theory in support of the claim: he certainly did not deliberate about killing the deceased victim, someone he did not even know, and Michigan does not recognize a principle of "transferred premeditation and deliberation."[2]

The Michigan Court of Appeals rejected the version of the argument presented to it as follows:

> Defendant argues that there is insufficient evidence presented to find him guilty of first-degree murder. Specifically, defendant argues that the prosecution did not prove the deliberation element of that offense beyond a reasonable doubt. We disagree.
>
> "[D]ue process requires proof by the prosecutor of each element beyond a reasonable doubt." *People v. Mette*, 243 Mich. App. 318, 327 (2000). A person is guilty of first-degree murder when the murder is "perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." MICH. COMP. LAWS § 750.316(1)(a). For first-degree murder, the prosecution must show that the

---

[2] While this argument has obviously not been exhausted, the Court may reject it on the merits despite non-exhaustion. *See* 28 U.S.C. § 2254(b)(2).

killing was intentional, deliberate, and premeditated. *People v. Youngblood*, 165 Mich. App. 381, 386-387 (1988). That is, "[t]o convict of first-degree murder, the prosecution [is] required to prove beyond a reasonable doubt that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberated." *Id*. at 386-387. "To premediate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v. Oros*, 502 Mich. 229, 240 (2018) (cleaned up). Further, with regard to deliberation, "[t]he time within which a wicked purpose is formed is immaterial, provided it is formed without disturbing excitement. The question of deliberation, when all the circumstances appear, is one of plain common sense ...." *Id*. at 243 (quotation marks and citation omitted). Premeditation and deliberation can be determined through the facts and circumstances surrounding the killing. *Youngblood*, 165 Mich App at 387.

Defendant does not argue that the evidence failed to show beyond a reasonable doubt that he intentionally killed a human. Further, given his express reference in his brief on appeal to "deliberation" and "disturbing excitement," which our Supreme Court has used to explain the "deliberation" element, *see Oros*, 502 Mich. at 243, and given that he does not reference "premeditation" or otherwise analyze that element, it appears that he is not arguing that the prosecution failed to show premeditation. The only element at issue is therefore deliberation.

The trial court did not err by finding that the evidence was sufficient to show deliberation beyond a reasonable doubt. The time that defendant spent retrieving his handgun from his car's air vent was more than sufficient for him to deliberate upon pointing and shooting the gun at the entrance to the bar. *See Oros*, 502 Mich. at 243 (explaining that deliberation may occur in a matter of seconds). Moreover, defendant himself admitted while testifying that he was aware at the time that "jail" was a likely outcome of the

shooting. Thus, defendant clearly "measure[d] ... the major facets" of shooting into the bar. *See id*. Additionally, defendant removed his jacket before returning to the bar with his handgun, which indicates that he was able to reflect upon a detail that would reduce the possibility of criminal punishment for his upcoming actions—by removing his jacket, defendant made it less likely that those inside the bar would recognize him. Given these facts, in addition to the other facts cited by the trial court showing that defendant executed a methodical plan to shoot directly at a large number of people gathered near the front of the bar, the trial court did not err by finding that the evidence was sufficient to show the element of deliberation beyond a reasonable doubt. In other words, defendant did not abruptly shoot at the group of people, with no thought or reflection beforehand. Rather, he formulated a plan that would reduce his chances of being stopped beforehand or sent to jail afterwards. He deliberated upon the shooting.

*Whitfield*, 2022 WL 1591591, at **2–3 (footnote omitted).

Under clearly established Supreme Court law, the standard governing sufficiency of the evidence claims is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under AEDPA, a habeas court's "review of a state-court conviction for sufficiency of the evidence is very limited," *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018), because *Jackson* claims are "subject to two

14

layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam).

First, it is the responsibility of the jury (or trial court at a bench trial) to decide what conclusions should be drawn from the evidence admitted at trial. *Johnson*, 566 U.S. at 651 (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)). "And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* (quoting *Smith*, 565 U.S. at 2); *see also Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017) (stating that "two layers of deference apply [to a sufficiency-of-the-evidence claim], one to the jury verdict, and one to the state appellate court").

In this case, under Michigan law, murder can be elevated to first-degree murder where it is "perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." MICH. COMP. LAWS § 750.316(1)(a). Whitfield challenges the element of deliberation. Deliberation requires that a person "measure and evaluate the major

facets of a choice or problem." *See People v. Woods*, 416 Mich. 581, 599 (1982) (quotation marks and citation omitted). Premeditation and deliberation may be established during an interval of time between the initial homicidal thought and ultimate action which would allow a reasonable person time to subject the nature of his or her action to a "second look." *People v. Gonzalez*, 468 Mich. 636, 641 (2003). "The time within which a wicked purpose is formed is immaterial, provided it is formed without disturbing excitement. The question of deliberation, when all the circumstances appear, is one of plain common sense; and an intelligent jury can seldom be at a loss to determine it." *People v. Holmes*, 111 Mich. 364, 372 (1896) (quoted in *People v. Oros*, 502 Mich. 229, 243 (2018)).

The state court reasonably applied the *Jackson* standard in rejecting this claim. First, the evidence showed that following the assault by the bouncer, Whitfield spent several minutes struggling to retrieve the handgun from under his hood before walking back towards the entrance of the bar and firing six shots at the exiting crowd of people. The trial court also noted that he did not use the most direct route but walked in a way that concealed his presence. Viewing the evidence most favorably

to the prosecution as *Jackson* dictates, a rational factfinder could conclude from these circumstances that during the extended period between the beating and the shooting, Whitfield had an opportunity to measure and evaluate the major facets of his choice whether to act on the idea of firing the gun into the crowd with the intent to kill.

Moreover, this is an unusual case in that the defendant's own testimony—viewed most favorably to the prosecution—provided direct evidence supporting the element of deliberation. Whitfield's description of the different voices he heard as he walked back to the bar could reasonably have been interpreted by the factfinder as indicating that he actually deliberated about whether carrying out the shooting was worth it in view of the fact that he would surely go to jail. Whitfield described what could reasonably be viewed as a deliberative process as he headed back to the bar with his weapon. The state court reasonably found that sufficient evidence of deliberation was presented at trial.

Whitfield's unexhausted, alternative argument fares no better. Whitfield asserts that there was no evidence presented that he deliberated whether to kill Glenn. How could he? He didn't know Glenn, didn't recall seeing him at the bar, and didn't see him standing by the

entrance when the shots were fired. Whitfield argues that convicting him of first-degree murder given these facts would require a doctrine of "transferred premeditation and deliberation," which does not exist under Michigan law. The argument suffers from two somewhat obvious flaws.

First, Whitfield is wrong on the facts. The trial court, sitting as the finder of fact, did not find that Whitfield only intended to shoot and kill the bouncer. The court found that Whitfield acted with premeditation and deliberation to shoot and kill *any* of the people standing in front of the bar, whether he knew who they were or not. That is, the court did not apply a concept of "transferred premeditation and deliberation."

Second, Whitfield is wrong on the law:

> In the unintended-victim (or bad-aim) situation where A aims at B but misses, hitting C -- it is the view of the criminal law that A is just as guilty as if his aim had been accurate. Thus where A aims at B with a murderous intent to kill, but because of a bad aim he hits and kills C, A is uniformly held guilty of the murder of C. *And if A aims at B with a first-degree-murder state of mind, he commits first degree murder as to C, by the majority view.* So too, where A aims at B with intent to injure B but, missing B, hits and injures C, A is guilty of battery of C.

*People v. Youngblood*, 165 Mich. App. 381, 387–388 (1988) (quoting LaFave & Scott, Handbook on Criminal Law, ch 3, § 35, at 252–253) (emphasis added). A "first-degree murder state of mind" in Michigan is

18

one that involves premeditation and deliberation. MICH. COMP. LAWS § 750.316(1)(a). Thus, even if it were true that Whitfield only premeditated and deliberated about shooting and killing Sullivan, that entire mental state—the one required for first-degree murder—transferred under state law to the killing of Glenn too.[3] Whitfield's alternative insufficiency of the evidence argument is therefore also without merit.

## B.   Manslaughter Instruction

Whitfield presents two additional claims in his motion for stay. He asserts that his trial counsel was ineffective for failing to request a jury instruction[4] on voluntary manslaughter and that his appellate counsel was ineffective for failing to raise the issue on direct appeal.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established the familiar two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's

---

[3] *Cf. Puckett v. Costello*, 111 F. App'x 379, 382–383 (6th Cir. 2004) (affirming district court's denial of petitioner's habeas petition after petitioner was convicted in state court of first-degree murder based on the theory of transferred intent).

[4] Whitfield elected to have a bench trial, so there were no jury instructions. The Court interprets the claim as asserting that trial counsel was ineffective for failing to ask the trial court sitting as finder of fact to consider the lesser offense of voluntary manslaughter.

19

performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the petitioner resulting in an unreliable or fundamentally unfair outcome. *Id*. at 687–688.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome" of the proceeding. *Id*. On balance, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the

[proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

Whitfield asserts that his counsel was ineffective for failing to present a voluntary manslaughter defense. He asserts that the beating he received at the bar from the security guard shortly before the shooting gave a sufficient basis for his counsel to argue that he acted in the heat of passion – mitigating the offense to voluntary manslaughter.

Under Michigan law, "for an act to be considered voluntary manslaughter, the defendant must kill in the heat of passion, the passion must be caused by adequate provocation, and there cannot be a lapse of time during which a reasonable person could control their passions. The provocation must be sufficient to cause the defendant to act out of passion rather than reason, but it also must be sufficient to cause a reasonable person to lose control, not just the specific defendant." *People v. Yeager*, 511 Mich. 478, 489 (2023) (citing *People v. Pouncey*, 437 Mich. 382, 389 (1991)).

Voluntary manslaughter is a lesser included offense of murder under Michigan law. "Both murder and voluntary manslaughter 'require a death, caused by defendant, with either an intent to kill, an intent to

21

commit great bodily harm, or an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result.' The distinguishing element is malice, which in voluntary manslaughter is 'negated by the presence of provocation and heat of passion.'" *Yeager*, 511 Mich. at 489–490 (internal citation omitted) (quoting *People v. Mendoza*, 468 Mich. 527, 536, 540 (2003)).

Whitfield correctly notes that his counsel chose not to advance a voluntary manslaughter defense and give the trial court the option of finding him guilty of that lesser offense. However, Whitfield's counsel did not limit his trial strategy to an all-or-nothing defense. Towards the end of his closing argument, counsel argued for a different, lesser included offense and explained: "During that rage, Your Honor, Mr. Whitfield did not have a chance to cool off. What he did was not what any of us would have or should have ever done, but it certainly does not rise to the level of first-degree premeditated murder. So, I would ask Your Honor to, if you find him guilty as to that charge, that it be second-degree murder." (ECF No. 9-8, PageID.719.)

Setting aside the question of whether failing to present a voluntary manslaughter defense in addition to a second-degree murder defense

22

constituted deficient performance, Whitfield cannot demonstrate *Strickland* prejudice. The specific findings made by the trial court show that there is no reasonable probability that such a defense would have been accepted.

The trial court found that when he fired his weapon, Whitfield "didn't just think about what he was about to do, he actually weighed the potential consequences of shooting into a crowd of people." (ECF No. 9-9, PageID.747.) The trial court also noted the timeline between Whitfield leaving the bar and the shooting, as shown by the video evidence, including the fact that Whitfield spent five minutes retrieving his firearm from the hood of his vehicle. (*Id.*, PageID.745.) The court noted that Whitfield did not rush back to the bar, but that he is "depicted in the video as standing in the alley or within the parking lot before he advances" and that "he steadily walks towards the entrance, no rush." (*Id.*) The court noted that Whitfield could be seen concealing his weapon in a bag. (*Id.*, PageID.746.) Further, the trial court remarked that Whitfield did not walk directly to the bar entrance; instead, he "walked along the sidewalk prior to setting his firing position, and the Court believes again this to be an important point. The parked cars adjacent to

23

Leach Street provided cover for him so the patrons in the parking lot would be unable - would be unable to see him approach." (*Id.*) To the trial court, this demonstrated "that despite his intoxication, the defendant proved himself to be methodical in executing his plan to ambush the patrons and staff that were in and around the entrance of the bar." (*Id.*, PageID.746–747.) Based on these findings, the trial court found that Whitfield acted with premeditation and was guilty of first-degree murder. (*Id.*, PageID.747.)

The trial court's findings of fact are therefore inconsistent with a defense that Whitfield acted in the heat of passion and that there was not a lapse of time during which a reasonable person could control their passions. No reasonable probability exists that the trial court would have found Whitfield guilty of the lesser offense of voluntary manslaughter had counsel requested that it do so, since the trial court considered, and rejected, a request that it find Whitfield guilty of second-degree murder. Whitfield's unexhausted ineffective assistance of trial counsel claim is therefore without merit.

Finally, because the underlying trial counsel claim is without merit, Whitfield's claim that his appellate counsel was ineffective for failing to

raise the issue on direct appeal is also without merit. *See Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.").

## IV.   CONCLUSION

Because Whitfield's claims do not merit habeas relief, the petition is denied. Furthermore, because jurists of reason would not debate the Court's conclusion, the Court will deny Whitfield a certificate of appealability. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Finally, the Court will deny permission to appeal in forma pauperis because any appeal of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

Therefore, the Court 1) **DENIES** the petition for a writ of habeas corpus (ECF No. 1), 2) **DENIES** Whitfield's motion to stay (ECF No. 11), 3) **DENIES** a certificate of appealability, and 4) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

Dated: January 5, 2026                    **s/ Jonathan J.C. Grey**
                                          Jonathan J.C. Grey
                                          United States District Judge

## <u>Certificate of Service</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 5, 2026.

<u>s/ S. Osorio</u>
Sandra Osorio
Case Manager

26